UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Gilmore Sampson, *et al.*,

      Plaintiffs,

v.                                                            Case No. 13-10113

Blue Cross Blue Shield of Michigan, *et al.*,      Sean F. Cox
                                                   United States District Court Judge
      Defendants.

_____/

**<u>OPINION & ORDER</u>**

This matter is currently before the Court on a Motion for Summary Judgment filed by

Defendants Detective Sergeant Lisa Gee-Cram ("Cram") and Trooper Gina Gettel ("Gettel").

The parties have briefed the issues and the Court finds that oral argument would not significantly

aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of

Michigan.  The Court therefore orders that the motion will be decided upon the briefs.

As explained below, the only count asserted against Defendant Gettel is Count V, while

Counts I, II, III, IV, and V are asserted against Defendant Cram.   For the reasons set forth below,

the Court shall GRANT THE MOTION to the extent that it shall: 1) dismiss Count I  of

Plaintiffs' Amended Complaint as to Defendant Cram because she is entitled to qualified

immunity; 2) dismiss Count V as to Defendants Cram and Gettel because they are entitled to

qualified immunity and Plaintiffs' request for a generalized "obey the law" injunction fails; and

3) dismiss both civil conspiracy claims against Defendant Cram (Counts III & IV).  Accordingly,

as to Defendants Cram and Gettel, the only count that now remains is Count II, which is asserted

1

against Defendant Cram.

## BACKGROUND

**A.    Procedural Background**

Plaintiffs John Gilmore Sampson, M.D. and Cecelia Sampson, Argyle Plastic and Reconstructive Surgery, P.C. ("Argyle"), Fourth Street Properties, LLC ("Fourth Street Properties"), and John Sampson, M.D., Trustee/Fiduciary of the Argyle Plastic and Reconstructive Surgery, P.C. 401(k) Profit Sharing Plan and Trust ("the Trust") filed this action in federal court on January 11, 2013, based on federal-question jurisdiction.

Plaintiffs' original Complaint named numerous Defendants and asserted the following claims: "42 USC 1983 Deprivation of Rights Under Fourth, Fifth And Fourteenth Amendments Due To Seizure Of Monies Without Probable Cause" (Count I); "Deprivation Of Rights Under Fourth, Fifth And Fourteenth Amendment Due To Seizure Of LLC Funds" (Count II); "42 USC 1983 Conspiracy To Deprive Of Rights Guaranteed By Fourth, Fifth And Fourteenth Amendments" (Count III); "42 USC 1985 Conspiracy To Deprive Of Equal Protection, Privileges And Immunities" (Count IV); "42 USC 1983 Deprivation Of Rights Under Fourth Amendment Due To BCBS Participation In Execution Of Warrant" (Count V); "42 USC Failure To Train/Supervisory Liability" (Count VI); "42 USC Abuse of Process (BCBSM)" (Count VII); "Abuse Of Process (Common Law)" (Count VIII); "Attorney Fees And Costs Under MCL 750.159a" (Count IX); "Invasion Of Privacy" (Count X); "Intentional Infliction Of Emotional Distress Dr. And Mrs. Sampson" (Count XI); "Breach Of Contract" (Count XII); "Interference With Business Relations And Contract" (Count XIII); "Promissory Estoppel" (Count XIV); "Concert Of Action" (Count XV); "Common Law Conspiracy" (Count XVI); and "Respondeat

Superior" (Count XVII).

On January 22, 2013, this Court issued an "Order Declining To Exercise Supplemental Jurisdiction Over State-Law Claims" (Docket Entry No. 3) and dismissed the following counts without prejudice: Counts VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, and XVII.  That left Counts I through VII remaining.

On September 20, 2013, Plaintiff filed an Amended Complaint (Docket Entry No. 19). Plaintiffs' Amended Complaint names the following Defendants: 1) BCBS; 2) Detective Sergeant Lisa Gee-Cram ("Cram"); 3) Detective Robert Schrock ("Schrock"); 4) Detective Timothy Schlundt; 5) Detective Lee Rose ("Rose"); 6) Detective Sergeant Brian Russell ("Russell"); 7) Trooper Gina Gettel ("Gettel"); 8) Blackman Township Public Safety Department; 9) Jackson County Sheriff Department; 10) the Jackson County Prosecutor's Office; 11) David Castelein ("Castelein"); 12) John Southworth ("Southworth"); 13) Nina Burnette ("Burnette"); 14) Patricia Hammerle ("Hammerle"); 15) Thomas Clickner ("Clickner"); 16) Susan Post ("Post"); 17) Roger Ramirez ("Ramirez"), and 18) Larry Harrison ("Harrison").  The Amended Complaint asserts eight counts.

On October 2, 2013, the Jackson County Defendants filed a Motion for Summary Judgment.  (D.E. No. 21).

On December 26, 2013, the BCBS Defendants filed a Motion for Judgment on the Pleadings, wherein they asserted that they were entitled to invoke the defense of qualified immunity.  (D.E. No. 28).  This Court denied that motion in a separate opinion and order.  (D.E. No. 40).

On February 3, 2014, this Court issued an Order Denying Without Prejudice Jackson

County Defendants' Motion for Summary Judgment. (D.E. No. 34). In it, the Court explained that it was denying the motion, without prejudice, because Defendants failed to comply with this Court's practice guidelines for motions for summary judgment and because the motion made factually-based arguments without citations to record evidence.

On February 4, 2014, Defendants Cram and Gettel filed the instant Motion for Summary Judgment. (D.E. No. 35). On February 5, 2014, they also filed a motion asking the Court to stay discovery until the Court rules on that motion. (D.E. No. 38).

Discovery is this action is currently stayed until after this Court rules upon the pending motion. (D.E. No. 47).

On February 21, 2014, Plaintiffs filed a motion seeking to file a Second Amended Complaint in order to drop their claims against the Jackson County Prosecutor's Office, the Jackson County Sheriff Department, and the Blackman County Public Safety Department and, instead, name Jackson County and Blackman County as Defendants. This Court granted that Motion in an order issued on March 21, 2014 (Docket Entry No. 55), ruling that Plaintiffs could filed their proposed Second Amended Complaint within ten (10) days of that order. Plaintiffs did not, however, file their Second Amended Complaint as allowed by that order.

Thus, the Plaintiffs' Amended Complaint (Docket Entry No. 19) is still the operative Complaint in this action.[1] Plaintiffs' Amended Complaint asserts the following claims:

> **"42 USC 1983 Deprivation of Rights Under Fourth, Fifth And Fourteenth Amendments Due To Seizure Of Monies Without Probable Cause" (Count I)**: this count, which is asserted against Defendants Cram and Rose, alleges that the seizure of funds under the financial warrants was unlawful because the warrants

---

[1]The Court notes that, as to Defendants Cram and Gettel, there are no differences between Plaintiffs' Amended Complaint and their proposed Second Amended Complaint.

were issued despite the lack of probable cause and no reasonably trained officer could have believed that the warrants contained probable cause.

**"Deprivation Of Rights Under Fourth, Fifth And Fourteenth Amendment Due To Seizure Of LLC Funds" (Count II):** this count, which is asserted against Defendants Cram and Rose, alleges that the officers seized money from savings and money market accounts belonging to Fourth Street Properties without a warrant authorizing them to do so.

**"42 USC 1983 Conspiracy To Deprive Of Rights Guaranteed By Fourth, Fifth And Fourteenth Amendments" (Count III):** this count, which is asserted against Defendants Cram, Castelein, Southworth, and BCBS, alleges that Defendants conspired to obtain money from Plaintiffs for restitution of alleged overpayments by BCBS without civil or criminal process and to prevent Plaintiffs from access.

**"42 USC 1985 Conspiracy To Deprive Of Equal Protection, Privileges And Immunities" (Count IV):** this count, which is asserted against Defendants Cram, Castelein, Southworth, and BCBS, alleges that Defendants conspired to deprive Plaintiffs of equal protection of the law because of Dr. Samson's national origin.

**"42 USC 1983 Deprivation Of Rights Under Fourth Amendment Due To BCBS Participation In Execution Of Warrant" (Count V):** this count, which is asserted against Defendants Cram, Schrock, Schlundt, Russell, Gettel, Castelein, Southworth, Clickner, Burnette, Hammerle, Post, Ramirez, Harrison, and BCBS, alleges that Defendants violated Plaintiffs' rights by having BCBS participate in the execution of search warrants and that participation was illegal because BCBS used the search to further its own interests.

**"42 USC Failure To Train/Supervisory Liability" (Count VI):** this Count seeks impose liability on a failure-to-train theory of municipal liability.

**"42 USC Abuse of Process (BCBSM)" (Count VII):** this Count, asserted against BCBS, alleges that BCBS misused the judicial process to search for information to assist in its civil collection of claims.

**"42 USC Malicious Prosecution (Castelein & BCBSM)," (Count VIII):** this count, asserted against Castelein and BCBS, alleges that BCBS initiated criminal proceedings out of malice or for purposes of securing money from Plaintiffs without due process.

(Am. Compl.).  Accordingly, the only count asserted against Defendant Gettel is Count V, while

Counts I, II, III, IV, and V are asserted against Defendant Cram.

5

**B.**     **The Pending Motion For Summary Judgment Raises The Defense Of Qualified Immunity**

Discovery in this matter has not concluded and discovery is currently stayed.  Indeed, before discovery was stayed the parties advised the Court that they have not yet begun taking depositions in this matter.

Nevertheless, Defendants Cram and Gettel filed the instant Motion for Summary Judgment wherein they raise the defense of qualified immunity.

Under the doctrine of qualified immunity, governmental officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights.  *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).  Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was "clearly established" at the time of the violation.  *Harris v. City of Circleville,* 583 F.3d 356, 365 (6th Cir. 2009).  The Court is free to consider those inquiries in whatever order it deems appropriate in the light of the issues presented.  *Jones*, 534 F.3d at 975.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial."  *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  Nevertheless, the Supreme Court has reiterated that questions of qualified immunity should be resolved at the earliest possible stage in the litigation or the "driving force" behind the immunity avoiding unwarranted discovery and other litigation costs   will be defeated."  *Everson v. Leis*,

556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223).

The Sixth Circuit has held that when faced with a motion for summary judgment based on qualified immunity, the district court cannot avoid ruling on the issue "solely because discovery was not complete." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004). In such circumstances, the district court should determine – prior to any further discovery – whether the plaintiff's complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation. *Summers,* 368 F.3d at 886; *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002). If so, the Court should turn to "the question of whether any facts material to [the plaintiff's] claim [are] genuinely at issue, an inquiry that require[s] the court to review the motion and its supporting documents as well the plaintiff's opposition and its supporting documents." *Skousen*, 305 F.3d at 527.

"Qualified immunity is an affirmative defense, and a defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). "Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established. *Id.* "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

**C.    Factual Background Set Forth By Plaintiffs' Allegations, Orders Issued In Related State-Court Civil And Criminal Actions, Undisputed Facts, And Other Evidence Submitted In Connection With The Pending Motion.**

In keeping with the above, the following material facts are gleaned from: 1) the allegations set forth in Plaintiffs' Amended Complaint; 2) opinions and orders issued in the related state-court criminal and civil actions; 3) undisputed facts contained in the parties'

7

respective statements submitted in connection with the pending motion[2]; and 4) other evidence submitted by the parties in connection with the pending motion.

Where the Court considers evidence presented by the parties, it shall construe the evidence in the light most favorable to Plaintiffs, the non-moving parties.

### 1.   Relationship Between Sampson And BCBS

Plaintiff Dr. John Sampson is a physician, licensed to practice medicine in Michigan. (Am. Compl. at ¶ 5). Dr. Sampson and his wife, Plaintiff Cecilia Sampson, own or have an interest in two business entities, Argyle and Fourth Street Properties.[3]  Mrs. Sampson is employed by Argyle (the medical practice).

Dr. Sampson entered into contracts with BCBS, under which he agreed to provide medical services to BCBS members in exchange for payment.  In 1995, he entered into a Traditional Agreement with BCBS and in 2004 he entered into a Participating Physician Agreement.  (Am. Compl. at ¶ 28).  Those contracts contain provisions for audit, dispute and appeal processes, and recovery of overpayments.  (Am. Compl. at ¶ 29).

Following an audit that began in August of 2009, BCBS advised Dr. Sampson in December of 2009 that preliminary audit results identified a minimum overpayment of $527,585.12 but that the audit was not complete. (Am. Compl. at ¶¶ 30-32).  On January 4, 2010, Castelein, a BCBS investigator, spoke with Dr. Sampson on the telephone about the audit but

---

[2]*See* this Court's practice guidelines for summary judgment motions, incorporated into the Scheduling Order (D.E. No. 18 at 2-3).  Both parties complied with those guidelines.  Thus, as to Defendants' Motion for Summary Judgment, Defendants submitted a Statement of Material Facts Not In Dispute, which shall be referred to as "Defs.' Stmt.", and Plaintiffs filed a Counter-Statement of Disputed Facts, which shall be referred to as "Pl.'s Counter-Stmt."

[3]Plaintiffs' Supplemental Brief states that Dr. Sampson alone owns and controls Argyle. (Docket Entry No. 67 at 6 n.3).

"upon Dr. Sampson's expression of dismay and outrage regarding the audit and intent to have his attorney involved, Castelein terminated the conversation."  (Am. Compl. at ¶ 33).

Plaintiffs allege that neither Castelein nor any other representative of BCBS made a complaint to "the Attorney General for investigation under the Health Care False Claims Act, MCL 752.1008," and instead, Castelein "initiated criminal proceedings to collect the amounts allegedly owed" to BCBS.  (Am. Compl. at ¶¶ 34 & 35).

Plaintiffs allege that on "January 12, 2010, Castelein met with one or more Jackson County assistant prosecutors and Det[ective] Cram," who is employed by the Michigan State Police.  (Am. Compl. at ¶ 11 & 36).  "Castelein provided Det. Cram, and possibly others, with a three-inch binder of information pertaining to BCBSM's investigation of Dr. Sampson." (Am. Compl. at ¶ 37).  "On January 15, 2010, relying entirely upon the information provided by Castelein without further investigation, and alleging criminal activity under the Health Care False Claims Act, search warrants were issued for search of Argyle and Trillium[4]" for a wide variety of patient files and records.

On January 19, 2010, Detective Cram and her team executed those search warrants at Argyle and Trillium. (Am. Compl. at ¶¶ 39-41).  At the request of Detective Cram, the following five members of the Jackson County Major Crimes Task Force "assisted in the execution of the warrants:" Detective Schrock, Detective Schlundt, Detective Rose, Detective Russell, and Trooper Gettel.  (Am. Compl. at ¶ 41).

Plaintiffs allege that Detective Cram "invited Castelein to put together a team from

---

[4]Argyle also does business as Trillium Cosmetic Surgery Center in Okemos, Michigan. (Am. Compl. at ¶ 7).

9

BCBSM to participate in the execution of the search warrants.  Castelein, using his own discretion as to the number of BCBSM employees and their expertise, chose to bring the eight BCBSM employees who are named as Defendants,[5] some of whom had prior knowledge of some portions of the investigation, others of who [sic] did not; all had been in law enforcement prior to their employment at BCBSM."  (Am. Compl. at ¶¶ 43-44).  Plaintiffs allege that "Castelein utilized the search to gather information to sue in collecting sums allegedly owed by BCBSM." (Am. Compl. at ¶ 46).

On January 19, 2010, Detective Cram also obtained a search warrant for the Sampson's home, to search for records and documents.  (Am. Compl. at ¶ 47).  Plaintiffs allege that search, which was done with "members of the Jackson County Major Crimes Tax [sic] Force and BCBSM employees" was illegal. (Am. Compl. at ¶ 48).

On January 19, 2010, Det. Cram with Det. Rose executed warrants for Citizens Bank, National City Bank, and Pension Consultants, Inc. to "seize all assets in all business and personal accounts owned by Dr. Sampson, Mrs. Sampson, Argyle, and Pension Consultants, Inc."  (Am. Compl. at ¶ 49).  Those warrants also froze all future deposits into those accounts.  (Am. Compl. at ¶ 50).  "In total, Plaintiffs had approximately $750,000 seized and/or frozen, including accounts and monies belonging to [Fourth Street Properties]." (Am. Compl. at ¶ 51).

At this point, no criminal charges had been filed against any of the Plaintiffs.

---

[5]In addition to Castelein, the named Defendants from BCBS are: 1) Southworth; 2) Burnette; 3) Hammerle; 4) Clickner; 5) Post; 6) Ramirez; and 7) Harrison.

**2.      Plaintiffs Unsuccessfully Challenge The Search Warrant And Seizure Of Funds In District Court**

Plaintiffs' Amended Complaint reflects that there was an action initiated in district court in Jackson County to challenge the search warrant and seizure of funds, district court case number 10-0002-GZO.  That case had a case caption of "IN RE: Search of Citizens Bank Accounts, Pension Consultants, Inc. Account, and National City Bank PNC Account."  It was an action brought by the Sampsons and their business entities to challenge the search warrant and seek return of monies that had been seized.  (Am. Compl. at ¶ 53).  There were orders issued in that case by the district court but they are not part of the record before this Court.  But other filings reflect that the district court judge upheld the warrants/seizures.

**3.      Plaintiffs Appeal To The Circuit Court And Prevail**

The Sampsons and their business entities appealed to the Jackson County Circuit Court. The case was assigned to the Honorable Chad Schmucker.

In an Opinion & Order issued on April 1, 2010, Judge Schmucker ruled that the seizure of funds "was unlawful in this case" and he reversed the district court's rulings and ordered the seized funds released and returned. (*See* 4/1/10 Opinion & Order, Docket Entry No. 32-1, at 7). That Opinion & Order explained that Plaintiffs were "challenging a search warrant authorized by the 12th District Court and executed in mid-January 2010."  (*Id.* at 1).  It stated that Plaintiffs (the petitioners there) were not challenging the seizure of records and documents, but rather, challenged "the seizure of the financial assets including the accounts at National City Bank, Citizens Bank, and Pension Consultants, Inc., and the seizure of any money and checks at the home and office of the doctor."  (*Id.*).  It noted that "Dr. Sampson, his wife, and his business have not been charged with any crime," and that no forfeiture action had been commenced

11

against them either.  (*Id*.).  It noted that the challenged warrant authorized the taking of all funds

in the bank accounts of the Plaintiffs, the entire pension fund, and any money or checks at the

business or home of Dr. Sampson and that the "search warrant does not limit the amount of

money which can be taken."  (*Id*. at 2).  Judge Schmucker stated, in pertinent part:

> I have reviewed the affidavits.  I am convinced they establish probable cause for
> intentional over-billing of substantial amounts and establish a substantial health
> care fraud.  The affidavits clearly support a search for and a seizure of billing,
> financial and medical records.
> . . . .
> The Affidavit does not establish how either the bank accounts or the Pension Plan
> are involved in the medical billing fraud.  The affidavit merely describes the fraud
> and states these accounts exist.
> . . . .
> The basis for the search warrant is primarily, if not exclusively, the result of Blue
> Cross/Blue Shield's investigation.  They presented the State Police with a 3 inch
> binder that was read, but from the record, it does not appear that any additional
> independent investigation was conducted by the State Police.
> . . . .
> This warrant allows the taking of money which is clearly unrelated to Blue Cross
> billings.
> . . . .
> In summary, these assets do not fall within MCL 880.655, which describes the
> property that can be seized with a warrant.  The Affidavit for this search warrant
> does not establish probable cause that they fall into any of the listed categories.

(*Id*. at 2-4).  The Opinion & Order further rejected the prosecution's argument that the property

was subject to forfeiture under RICO, explaining that the process under the relied upon forfeiture

provision "is conviction, order of forfeiture and then seizure.  Nothing in [the relied upon statute]

suggests a seizure can occur before conviction, much less before someone has been charged."

(*Id*. at 5).

Judge Schmucker's Opinion & Order concluded by stating, in pertinent part, that:

> These search warrant do not establish probable cause for seizure of the bank
> accounts, cash, checks, or pension plans.  These items are not included within the
> listed property that can be seized in MCL 780.652.  As such, the search warrant is

12

overbroad.  Even though there is evidence of a crime, it will not allow the seizure
of these items at this time.
. . . .
The Affidavit for a search warrant establishes a substantial fraud.  I acknowledge
that the amount of money is large, even for a high-earning medical doctor.  I am
not suggesting the money cannot be subject to civil forfeiture procedure or that
access to the money somehow cannot be restricted by conditions of bond. But, I
find that the seizure was unlawful in this case and I am reversing the District
Court and ordering these items released and returned.

THIS IS A FINAL ORDER.

(*Id.* at 7).

### 4.      Plaintiffs Are Then Charged Criminally In Jackson County Circuit Court

Plaintiffs' Complaint states that "[o]n April 7, 2010, Dr. Sampson and Mrs. Sampson

were criminally charged with 20 counts of making false claims and one count of conspiracy

under the Health Care False Claims Act."  (Am. Compl. at ¶ 58).  Charges were also filed against

Argyle.  (*Id.* at ¶ 68).

### 5.      Meanwhile, BCBS Files A Civil Action Against the Sampsons In Jackson County Circuit Court

Meanwhile, in April of 2010, BCBS initiated a civil action against Dr. Sampson and

Argyle in Jackson County Circuit Court.  (*See* Docket Entry No. 26-6, and Am. Compl. at ¶ 59,

alleging that "On April 12, 2010, BSBSM filed a civil complaint against Dr. Sampson and

Argyle alleging various claims for overpayment.").

Plaintiffs allege that on April 20, 2010, BCBS filed a motion for preliminary injunction

"to prevent the return of the monies that had been illegally seized as required by the April 1,

2010 Order" and that the "motion relied upon the information which Castelein wrongfully

obtained during the execution of the warrant (i.e., that Dr. Sampson was Jamaican and therefore

might abscond with the monies."  (Am. Compl. at ¶ 61).  "At hearing held on April 27, 2010,

BCBSM argued that the illegally seized monies were restitution for sums owed to BSBSM and should not be released to Dr. Sampson because he was Jamaican." (Am. Compl. at ¶ 64; *see also* Castelein Affidavit, Docket Entry No. 26-6 at ¶ 3, wherein he states that he attended the execution of the search warrants on January 19, 2010, and during that time, observed Dr. Sampson's most recent tax return identified him as a citizen of Jamaica, a passport identifying him as a Jamaican citizen, documents that show he owns real property in Jamaica, and documents showing he owns various financial accounts in Antigua and Jamaica.).

"Judge Schmucker denied the Motion for Preliminary Injunction, and the monies were finally released with a check dated on or around May 7, 2010." (Am. Compl. at ¶ 65). "Thereafter, BSBSM amended its Complaint to include Mrs. Sampson as a Defendant in the civil action." (Am. Compl. at ¶ 66).

Plaintiffs allege that "[f]ollowing Defendants' Motion for Summary Disposition which was granted in part and denied in part, the parties agreed to stay the civil action until the conclusion of the criminal matter." (Am. Compl. at ¶ 67).

### 6.    Plaintiffs File This Action While The Criminal Case Was Still Pending, But Before The Circuit Court Ruled On A Motion to Suppress.

In connection with the criminal cases against them, the Sampsons filed a Motion to Suppress Evidence, with the circuit court judge presiding over the criminal cases, the Honorable Thomas D. Wilson. ( Docket Entry No. 28-2, Copy of 4/10/13 Opinion And Order).  That Opinion & Order states that, with respect to the Motion to Suppress, the court "held an evidentiary hearing on February 22, 2012, through February 23, *2012*." (*Id*. at 2) (emphasis added).

While the criminal actions were still pending in Jackson County Circuit Court, Plaintiffs

14

initiated this action on January 11, 2013, by filing their original complaint.  At that time, Judge

Wilson had not yet issued a ruling as to the Motion to Suppress.

Judge Wilson did not issue a ruling on the Motion to Suppress until April 10, *2013*, when

he issued a written Opinion & Order denying the motion.

### 7.    Circuit Court Decision Denying Motion to Suppress In Criminal Case

On April 10, 2013, Judge Wilson issued an "Opinion And Order Following Defendants'

Motion To Suppress Evidence" that states, in pertinent part:

> Defendants seek to exclude evidence gleaned from the civilian-assisted execution
> of three police search warrants on January 19, 2010 . . . Defendants claim that
> civilian participation is not authorized under Michigan law and, in this case,
> violated the parameters tolerated by the 4th Amendment.  In response, the People
> contend that civilian participation is permissible and the executions lawful
> because neither the officers nor the recruited civilians exceeded the scope of the
> warrants.
> . . . .
> The first issue before the Court is whether the participation of civilians in
> the execution of a search warrant, an interrogation, or drafting of a police report is
> *per se* illegal under Michigan law.  Unlike federal law, there is no explicit statute
> authorizing law enforcement to use civilian assistance . . . [and] Defendants have
> not provided any Michigan legal authority precluding the use of civilians in the
> execution of search warrants . . . Without a particular state law to violate, the
> Court must review the legality of the searches in light of the Fourth Amendment.
> Although the state may grant more protections against governmental intrusions
> than the US Constitution, it may not grant less.  So, in order to pass constitutional
> muster on both state and federal levels, the searches must comply with the 4th
> Amendment.
> Civilian participation in the execution of a search warrant does not
> automatically violate the 4th Amendment.
> . . . .
> The Sixth Circuit has interpreted civilian assistance in the execution of police
> searches to be reasonable when (1) the civilians were present on the premises in
> aid of officers authorized to conduct the particular search, (2) the officers
> requested the presence of the civilians, and (3( the officers were present and acting
> in execution of the warrant.  *United States v. Clouston*, 623 F2d 485, 486-87 (CA
> 6 1980). . . Most recently, the Sixth Circuit affirmatively restated the rule from
> *Bills* in *Stack v. Killian*, 96 F3d 159, 162 FN1 (CA 6 1996): "Police may
> constitutionally call upon private citizens to assist them, and where assistance is

15

rendered in aid of a warrant, and not for some other purpose, the bounds of reasonableness have not been overstepped."

Here, the Court does not find that the bounds of reasonableness have been overstepped. Blue Cross Blue Shield employees were present during the searches to aid the officers in identifying medical documents. The officers were authorized to search the three locations pursuant to three valid search warrants. The officers requested the assistance of Blue Cross Blue Shield, and officers, although outnumbered, were present on each of the premises and searching concurrently with Blue Cross Blue Shield employees. Unlike *Clouston*, nothing was seized by Blue Cross Blue Shield employee that was not authorized by Detective-Sergeant Gee-Cram. Further, Detective-Sergeant Gee-Cram did not authorize the seizure of any item that was beyond the scope of the warrant. Despite Blue Cross Blue Shield's latter use of information gained through the searches, at the time of the search, all evidence pursued and gathered benefitted the purposes of law enforcement. Because the assistance of Blue Cross Blue Shield employees furthered the authorized goals of the law enforcement investigation, the Court finds that the citizen participation in this case was reasonable and lawful.

Applying the same test, the Court also finds that Blue Cross Blue Shield employees' participation in the interviewing and summary drafts is also reasonable under the 4th Amendment. The civilians were present at law enforcement's request to assist the police with questioning. Even though some of the civilians asked nearly all the questions, the police were present during the entire interview and retained control. The Court is not concerned that a Blue Cross Blue Shield employee drafted a report rather than an officer submitted as his police report because he was present during the interview and takes responsibility for its content. Nor is the reasonableness of the interviews undermined by Blue Cross Blue Shield's private use of information gained from the participation as agents of the law enforcement in government searches because the information was originally obtained to further a [sic] legitimate law enforcement purposes. Although Blue Cross Blue Shield's misuse of the information subsequent to the searches exposes them to civil litigation, it does not render a valid search unreasonable. Therefore,

IT IS HEREBY ORDERED that Defendants' Motion to Suppress is DENIED.

(*Id.*).

**8.    A Plea Agreement Is Reached In The Criminal Case On May 8, 2013.**

All criminal charges against Dr. and Mrs. Sampson were ultimately dropped as part of a plea agreement reached on May 8, 2013. Argyle entered into a plea agreement under which: 1)

16

Argyle agreed to plead no contest to an added count of using false pretenses with intent to defraud between $1,000 and $20,000, in violation of Mich. Comp. Laws § 750.218(4)(a); 2) the existing criminal charges against Dr. and Mrs. Sampson would be dismissed; and 3) the "state civil action by Defendants to be dismissed to County and state agencies and personnel." (Ex. 9 to Defs.' Motion). That plea agreement resolved all criminal charges against Plaintiffs and there are no criminal charges pending.

## ANALYSIS

**I.    Challenges To Count V, Plaintiffs' Claim Based On BCBS's Involvement In Search**

The pending motion asserts that Count V, the Count based upon BCBS's involvement in the search, should be dismissed as to both Defendants Cram and Gettel.

### A.    Are Plaintiffs Estopped From Re-Litigating The State-Court Determination That BCBS Participation Was Reasonable?

First, Defendants Cram and Gettel argue that this Count should be dismissed because Plaintiffs are estopped from re-litigating the state-court determination that BCBS's participation in the search was reasonable and therefore constitutional. (*See* Defs.' Br. at 6). Defendants note that Judge Wilson ruled, after an evidentiary hearing, that the use of BCBS employees in the search was reasonable and therefore their participation did not render the search unconstitutional.

The preclusive effect of a state court judgment is determined by that states's law. *Migra v. Warren Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984). Both parties agree that the elements of collateral estoppel under Michigan law are set forth in *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-84 (2004). Generally, for collateral estoppel to apply three elements must be satisfied: 1) a question of fact essential to the judgment must have been actually litigated and determined by a judgment; 2) the same parties must have had a full and fair opportunity to

17

litigate the issue; and 3) there must mutuality of estoppel.

Defendants contend that Plaintiffs are estopped from re-litigating Judge Wilson's determination because these elements are satisfied.

In response, Plaintiffs contend that the state-court suppression ruling does not support issue preclusion because they did not have a full and fair opportunity to litigate the issue. (Pls.' Br. at 15). Plaintiffs assert that because the criminal case resolved, Plaintiffs could not appeal Judge Wilson's order denying the suppression motion. They direct the Court to footnote 2 in *Monat*, where the court stated that "[i]n determining whether a party has had a 'full and fair' opportunity to litigate an issue, courts should look to the factors set forth in 1 Restatement Judgments, 2d, ch. 3, Former Adjudication, §§ 28-29" which includes "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *Monat*, 469 Mich. at 683 n.2.

Plaintiffs assert that the Jackson County Prosecutor dismissed all criminal charges against Dr. and Mrs. Sampson and therefore they "had no legal way to appeal Judge Wilson's order denying suppression based on the manner of the search   they were dismissed from the case." (Pls.' Br. at 15-16). Plaintiffs assert that "[t]his presents an interesting kink." (*Id*.).

But this was not an instance wherein the prosecutor simply dropped the charges. The charges against Dr. and Mrs. Sampson were dropped as part of a plea agreement that Argyle   an entity owned and controlled by Dr. Sampson   entered into. (Ex. 9 to Defs.' Motion).

Nevertheless, there is some support for Plaintiffs' position that a defendant's inability to test a motion to suppress ruling in an appellate court drains the ruling of preclusive effect. *See Bradley v. Reno*, 749 F.3d 553 (6th Cir. 2014) (stating that "[a]ll indicators suggest that Ohio's

18

courts would agree with § 28 of the Restatement of Judgments, which says: no appeal, no

preclusion" and that the "no-preclusion rule" applies "when circumstances frustrate an otherwise

available appeal.").

This Court need not resolve the issue, however, because the Court concludes that even if

collateral estoppel does not apply, Defendants Cram and Gettel are entitled to qualified

immunity.

**B.     Are Defendants Cram And Gettel Entitled To Qualified Immunity As To Count V?**

As their second basis for dismissal of Count, Defendants Cram and Gettel assert that they

are entitled to qualified immunity as to Count V.

Again, the qualified immunity inquiry looks at: 1) whether the complaint alleges a

constitutional violation; and 2) whether the constitutional right was clearly established.  The

Court need not address both prongs.  That is, if the Court concludes that the clearly established

prong is not met, then the officers are entitled to qualified immunity even if there was a

constitutional violation.

Given a recent Sixth Circuit case, *Bray*, the Court concludes that even if Plaintiffs could

establish a constitutional violation as to the officers using BCBS employees to assist in the

search, the officers are nonetheless entitled to qualified immunity.  *Bray v. Planned Parenthood

Columbia-Williamette, Inc.*, __ F.3d __, 2014 WL 1099107 (6th Cir. March 21, 2014).

In *Bray*, Planned Parenthood Columbia Willamette, Inc. ("PPCW") obtained a money

judgment against Michael Bray, an antiabortion activist.  PPCW sought to enforce and collect on

the judgment and a district court issued a writ of execution authorizing the U.S. Marshals Service

to seize various property.  A separate order issued the same day stated that "[i]f requested, by the

United States Marshal's Service, a representative from [PPCW] shall be present to assist in the identification of property subject to seizure." *Id*. at *3.  When the writ was executed at Bray's home, numerous individuals from PPCW accompanied the marshals and one of them videotaped the inside of Bray's home.  Bray filed suit against the marshals who executed the writ and order and the district court dismissed the action, ruling that the marshals were protected by qualified immunity.

The Sixth Circuit affirmed.  Notably, the Sixth Circuit found that the marshals' alleged actions in executing the writ were unreasonable and that they violated Bray's rights under the Fourth Amendment.  *Id*. at *7.  Indeed, the Sixth Circuit was quite critical of the facts alleged concerning the search.  *Id*. at * 1 ("If the facts alleged in the complaint are true, this case involves an incident that is more like home raids by Red Guards during China's Cultural Revolution than like what we should expect in the United States of America.").  Nevertheless, the Sixth Circuit held that the marshals "are protected from suit by the doctrine of qualified immunity, because these constitutional rights were not clearly established at the time of the violations." *Id*. at *8.  In so ruling, the court explained that a "right is clearly established if 'every reasonable officer would have understood that what he [was] doing violate[d] that right,' and 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Reichele v. Howards*, __ U.S. __, __ 132 S.Ct. 2088, 2093 (2013)).

The Sixth Circuit found that Defendants violated the plaintiffs' Fourth Amendment rights by having multiple unauthorized PPCW representatives participate during the execution of search warrants.  The court found, however, that the marshals might have "reasonably believed that it was acceptable to invite additional representatives of PPCW to join the raid, because outside

involvement in the execution of a court order is sometimes permissible.  For example, in *United States v. Clouston*, 623 F.2d 485, 486-87 (6th Cir. 1980), this circuit approved assistance by a telephone company's employees in the execution of warrant related to wiretapping, partly because the employees were present to aid in the identification of electronic devices covered by the warrant."  *Bray, supra*, at *8.  The court further explained:

> Although here the writ of execution identified the number of PPCW representatives who were authorized to be present, a marshal might nonetheless have concluded that it was permissible to invite additional representatives of PPCW to execute the writ, because officers may sometimes seek the aid of third parties in executing court orders.  Further buttressing this conclusion, the marshals' actions in seeking outside assistance were distinct from those in which this circuit has recognized a possible constitutional violation.  For example, the marshals did not invite private individuals to join them *after* they had already completed a search authorized by a warrant, as occurred in *Bills v. Aseltine*, 958 F.2d 697, 702 (6th Cir. 1992).

*Id*. (emphasis in original).

The Court also concluded that "[a]n officer who was unaware that the additional representatives of PPCW were not authorized to be present might also have reasonably concluded that the individuals could film the home," given that other circuits have assumed without deciding that videotaping the execution of a valid search warrant is lawful.  *Id*. The court concluded that:

> Although here the cameraman was not authorized to be present in the Brays' home, reasonable officers who were mistaken about the lawfulness of inviting additional representatives of PPCW to join the raid might likewise have been mistaken about whether those representatives could film the home, particularly in light of the camera's utility in capturing the condition of the property prior to its sale.  Therefore, the rights the marshals breached were not clearly established at the time of the violations.

*Id.* at *9.

Here, there was no videotaping alleged and there is no allegation that BCBS

21

representatives were brought in after the search was over.  Rather, Plaintiffs allege Defendants violated their Fourth Amendment rights by having BCBS representatives participate during the execution of the search warrants.  Even if that conduct violated Plaintiffs' constitutional rights, Plaintiffs have to show that the rights Defendants violated were clearly established at the time of alleged misconduct such that a reasonable officer could not have believed that his or her conduct was lawful.

In response to this Court's order for supplemental briefing, Plaintiffs concede that, in light of *Bray*, Defendants Cram and Gettel are entitled to qualified immunity as to Count V.  (*See* Docket Entry No. 67 at 5).   Thus, the Court shall rule that Defendants Cram and Gettel are entitled to qualified immunity as to Count V of Plaintiffs' Amended Complaint.

But Plaintiffs assert that their "second amended complaint also seeks injunctive relief" and assert that the defense of qualified immunity does not shield defendants from injunctive relief.  (*Id*.) (citing *Ward v. Polite*, 667 F.3d 727, 742 (6th Cir. 2012)).

As Defendants note in their supplemental brief, although this Court granted them leave to do so, Plaintiffs never filed their proposed Second Amended Complaint.  Nevertheless, Count V of Plaintiffs' Amended Complaint, which is the operative complaint before the Court, does request injunctive relief.  Count V of Plaintiffs' Amended Complaint requests that the Court "[i]ssue injunctive relief, preliminary and permanent thereafter, enjoining the Defendants" "from searching Plaintiffs except upon properly executed search or arrest warrants."  (Am. Compl. at 28).

It is true that "[q]ualified immunity shields government officials from monetary damages, not from injunctive relief." *Ward*, 667 F.3d at 742 (citing *Harlow v. Fitzgerald*, 457 U.S 800, 818 (1982)); *see also Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001). But it is also true that a mere "obey the law injunction" cannot be sustained. *See, e.g., E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (citing *NLRB v. Express Publishing Co.*, 312 U.S. 426, 435-36 (1941)). That is all that Plaintiffs seek here. Moreover, it is undisputed that the criminal case is closed and there does not appear to be any reason to expect future contact between Plaintiffs and Defendants Cram and Gettel. Thus, the Court shall dismiss this count in its entirety as to Defendants Cram and Gettel.

## II.     Is Defendant Cram Entitled To Qualified Immunity As To Count I, Which Challenges The Seizure Of Funds Under Warrants Issued On The Ground That They Were Issued Without Probable Cause?

Count I asserts that Plaintiffs had a right to be free from issuance of search warrants without probable cause. Plaintiffs contend that no reasonably trained law enforcement officer could have believed that the warrants at issue contained probable cause for seizure of the funds.

Count I is asserted against Defendant Cram but not against Defendant Gettel. Defendant Cram does not assert that Plaintiffs are estopped from re-litigating a state-court determination as to the seizure of funds because, of course, Judge Schmucker ultimately found the warrants allowing seizure of the funds invalid. But Defendant Cram contends that she is entitled to qualified immunity as to this Court.

### A.     Does Count I Allege A Constitutional Violation?

Defendant Cram asserts that although Count I references other constitutional amendments, Count I must be analyzed solely under the Fourth Amendment because Plaintiffs

23

are complaining of an alleged unreasonable seizure, which the Fourth Amendment specifically addresses. That is, she contends that because the seizures were the result of a search warrant, this claim is analyzed only under the Fourth Amendment. Defendants' brief directs the Court to several cases to support that proposition. (Defs.' Br. at 12). Moreover, in responding to Defendants' motion, Plaintiffs appear to agree with the assertion that Count I must be analyzed under the Fourth Amendment only. (*See* Pls.' Br. at 3, arguing that the "seizure of monies violated Plaintiffs' Fourth Amendment rights." and not disputing Defendants' that Count I is analyzed solely under the Fourth Amendment). The Court shall therefore analyze Count I under the Fourth Amendment.

The first step is to determine if Count I of the Amended Complaint alleges a constitutional violation as to Cram.

Where a plaintiff alleges that he was subject to an unreasonable search or seizure because a warrant that was actually issued by a judge or magistrate was not truly supported by probable cause, the standard that applies is set forth in *Messerschmidt.  Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012).

Like the plaintiff in *Messerschmidt,* Plaintiffs allege they were subjected to unreasonable search and seizure of the funds at issue in violation of the Fourth Amendment because the warrants authorizing the seizure of the funds were not actually supported by probable cause. The officers in this case, like the officers in *Messerschmidt*, assert that they are entitled to qualified immunity as to these claims. Thus, as in *Messerschmidt*, the validity of the financial warrants is not before the Court, but rather, the question is whether Cram and Gettel are "entitled to immunity from damages, even assuming that the warrant[s] should not have been issued."

24

*Messerschmidt,* 132 S.Ct. at 1244.

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt, supra*, at 1244.

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt, supra*, at 1245.  Nevertheless, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id*.  The Supreme Court has "recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Messerschmidt, supra*, at 1245 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, (1986)).  "The 'shield of immunity' otherwise conferred by the warrant" "will be lost, for example, where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Messerschmidt, supra*, at 1245 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  That is, the magistrate who signed the warrant must have "so obviously erred that any reasonable officer would have recognized the error." *Id*. at 1250.

The Supreme Court noted that "the *threshold for establishing this exception is a high one, and it should be.*" *Messerschmidt, supra*, at 1245 (emphasis added).  The Court explained that the "occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial

25

approval of his actions." *Id*. at 1250.  The Court further explained:

> As we explained in *Leon*, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id*., at 921, 104 S.Ct. 3405; *see also Malley, supra*, at 346, n.9, 106 S.Ct. 1092 ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" (internal quotation marks and citation omitted)).

*Id.* at 1245.

The district court denied qualified immunity to the officer in *Messerschmidt* and relied on

*Groh v. Ramirez,* 540 U.S. 551 (2004).  In reversing, the Supreme Court found that precedent "is

far afield," explaining:

> There, we held that officers who carried out a warrant-approved search were not entitled to qualified immunity because the warrant in question failed to describe the items to be seized at all.  *Id*., at 557, 124 S.Ct. 1284.  We explained that "[i]n the portion of the form that called for a description of the 'person or property' to be seized, [the applicant] typed a description of [the target's] two-story blue house rather than the alleged stockpile of firearms."  *Id*., at 554, 124 S.Ct. 1284.  Thus, the warrant stated non-sensically that "'there is now concealed [on the specified premises] a certain person or property, name [a] single dwelling residence two story in height which is blue in color and had two additions attached to the east.'" *Id*., at 554-555, n.2, 124 S.Ct. 1284 (bracketed material in original).  Because 'even a cursory reading of the warrant in [that] case   perhaps just a simple glance   would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal," *id*., at 564, 124 S.Ct. 1284, we held that the officer was not entitled to qualified immunity.
>
> The instant case is not remotely similar.  In contrast to *Groh*, any defect here would not have been obvious from the face of the warrant.  Rather, any arguable defect would have become apparent only upon a close parsing of the warrant application, and a comparison of the affidavit to the terms of the warrant to determine whether the affidavit established probable cause to search for all the items listed in the warrant.  This is not an error that "just a simple glance" would have revealed.

*Messerschmidt,* 132 S.Ct. at 1250.

Thus, the question here is whether it would have been obvious that no reasonably competent officer would have concluded that the financial warrants should not have issued. This Court concludes that this is not one of those exceedingly rare cases where that very high standard is met. Like the warrant at issue in *Messerschmidt,* the defect is not an error that "just a simple glance" at the warrant would have revealed. Rather, the defect with the warrant ultimately found by Judge Schmucker would have only become apparent upon a careful and detailed legal analysis, looking at the warrant, the affidavit, and the relevant statute. As such, Defendant Cram is entitled to qualified immunity at to Count I.[6]

## III.    Defendant Cram Has Not Challenged Count II

Count II of Plaintiffs' Amended Complaint is asserted against Defendants Cram and Rose.[7] In that Count, Plaintiffs allege that Defendants Cram and Rose "seized $32,836.12 from a savings account and $10,086.09 from a money market account belonging to" Fourth Street Properties, although "[t]here was no warrant allowing seizure of accounts and assets belonging to" Fourth Street Properties. (Pls.' Am. Compl. at 14-15). Plaintiffs further allege that on January 19, 2010, it was clearly established that property may not be seized without a valid

---

[6]The Court notes that Plaintiffs' complaint seeks injunctive relief as to Count I (Am. Compl. at 14) (requesting that the Court order injunctive relief and enjoin Defendant from "searching Plaintiffs' property except upon properly executed search warrants."). Again, such "obey the law" injunctions cannot be sustained.

[7]Defense Counsel's supplemental brief (Docket Entry No. 69 at 8 n.2) asserts that the Court erroneously refers to this Count being asserted against Defendant Rose and then argues as to why this Count should be dismissed against Defendant Gettel. This Court is addressing this Count *as alleged by Plaintiffs*. The operative complaint, Plaintiffs' Amended Complaint, asserts Count II against Defendants Rose and Cram. (*See* Docket Entry No. 19, Am. Compl. at ¶¶ 92 & 95 and Count II's prayer for relief.). Because Count II is not asserted against Defendant Gettel, the Court need not consider any arguments as to why that count would fail as to her.

warrant and that no reasonably trained law enforcement officer would have believed that he or she could seize accounts without a warrant.  (*Id.*).  Thus, Count II asserts that although the financial warrants did not authorize the freezing/seizure of any funds belonging to Fourth Street Properties, Defendants Cram and Rose nevertheless seized accounts belonging to Fourth Street Properties.

Although they filed a Motion for Summary Judgment (rather than a motion seeking partial summary judgment) and asked the Court to dismiss all claims asserted against them, Defendant Cram and Gettel's motion does not appear to address this count.  In its order for supplemental briefing this Court therefore asked Defense Counsel to confirm that the pending motion does not challenge Count II.  (*See* Docket Entry No. 65 at 2).

In responding to that order, Defendants assert that their motion also challenges Count II and direct the Court to pages 12-16 of their motion.  (*See* Docket Entry No. 68 at 1).  Defendants state that "the allegations of Count II refer specifically to the warrant executed at Citizens Bank," which was attached to Defendants' motion as Exhibit 8, and that "[t]hose documents articulate probable cause for the seizure authorized by the magistrate."  (*Id.* at 1-2).

Count I challenged the financial warrants on the ground that they lacked probable cause and that no reasonably trained law enforcement officer could have believed that the warrants at issue contained probable cause for seizure of the funds.  Count II, however, does not assert that the warrants were issued without probable cause.  Rather, Count II asserts a different claim.  Count II alleges that there was no warrant that authorized the seizure of accounts held by Fourth Street Properties, but that Defendants Cram and Rose nevertheless seized funds from Fourth Street Properties' accounts.  Having re-read the identified pages of Defendants' brief, the Court

28

still concludes that Defendants' motion does not challenge Count II.

The Court notes that Defendants' response to the Court's order also seeks to raise grounds for challenging Count II that were not contained in its motion. (*See* Docket Entry No. 68 at 3). This Court does not believe it is appropriate to allow Defendants to raise new challenges to Count II in this manner (ie., in response to a narrow inquiry by the Court and without full briefing by both parties). Accordingly, the Court declines to make any ruling regarding Count II at this juncture. If Defendant Cram wishes to seek qualified immunity as to Count II, or challenge that count on another basis, she may file a separate motion doing so.

## IV.   Challenges To Conspiracy Claims, Counts III & IV

Plaintiffs' Amended Complaint includes two civil rights conspiracy claims: 1) Count III, which asserts a civil rights conspiracy in violation of 42 U.S.C. § 1983; and 2) Count IV, which alleges a civil rights conspiracy in violation of 42 U.S.C. § 1985. Those claims are asserted against Defendant Cram but not against Gettel.

Defendant Cram contends that the conspiracy claims against her should be dismissed on several grounds and that she is entitled to qualified immunity as to both of these two counts.

In responding to Defendants' motion challenging both of Plaintiffs' conspiracy claims, Plaintiffs do not address the various arguments made and, instead, simply assert:

> III.   Plaintiffs' Conspiracy Claims Survive
> Taken in the best light to Plaintiffs, are there [sic] sufficient facts to support a claim of conspiracy between the state actors to seize the disputed overpayments of BCMSM and due [sic] Dr. Sampson's national origin.

(Pls.' Br. at 21). Thus, Plaintiffs have failed to address any of the specific arguments raised by Defendant Cram, including her assertion that she is entitled to qualified immunity, and only dispute the dismissal of the conspiracy claim under § 1985. Accordingly, the Court shall dismiss

the conspiracy claim asserted in Count III and proceed to analyze the conspiracy claim asserted in Count IV.

In Count IV, Plaintiffs assert a civil conspiracy under 42 U.S.C. § 1985 against several defendants, including Defendant Cram.  Defendant Cram challenges this claim in several respects, none of which are addressed by Plaintiffs.

A civil conspiracy is an agreement between two or more persons to injury another by unlawful action.  *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).  "Civil conspiracy claims must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts" are insufficient to state a claim.  *Id*.

In Count IV, Plaintiffs allege that several Defendants, including Cram, conspired to "deprive Dr. Sampson of the equal protection of the laws" "because he was a citizen of Jamaica" "as evidenced by": 1) Castelein and Cram discovering Dr. Sampson's citizenship and ties to Jamaica and Antigua while executing the search warrants: 2) Prosecutor Schrotenboer (who is not a defendant in this case) stating in a criminal court proceeding that Dr. Sampson was Jamaican citizen and, if he decided to leave the country, had a bank account and property in Jamaica; and 3) BCBS asserting, during the course of a civil action, that Dr. Sampson may transfer money allegedly overpaid to BCBS outside of the county and noting he owns property and accounts in Jamaica.

Plaintiffs' Amended Complaint does not specify which subsection of 42 U.S.C. § 1985 Dr. Sampson alleges was violated.  Nevertheless, subsection (1) is not applicable because the complaint does not allege a conspiracy that prevented an officer from performing his or her duties.  *See Moniz v. Cox*, 512 F. App'x. 495, 500 n.2 (6th Cir. 2013); *Fox v. Michigan State*

30

*Police Dep't.,* 173 F. A'ppx. 372, 376 (6th Cir. 2006).  The first clause of subsection (2) is not applicable because Dr. Sampson does not allege a conspiracy to influence parties, witnesses, or jurors in a federal court proceeding. *Id.*

"Under both the second clause of § 1985(2), which prohibits conspiracies to interfere with due process in state courts with the intent to deprive person of their equal protection rights, and § 1985(3), which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Fox, supra*, at 376. Plaintiffs' complaint does not state a claim under § 1985 because there are no allegations, conclusory or factually-supported, of any race or class-based *discriminatory animus* on the part of Defendants.  *Moniz, supra*, at 500.  That is, Plaintiffs have not even actually alleged, even as a conclusory allegation, that Defendants acted because of a discriminatory animus.  And there are no factual allegations that would support such an allegation. Rather, Plaintiffs have only alleged that Defendants engaged in a civil conspiracy in violation of § 1985 simply by virtue of their referencing Dr. Sampson's citizenship in another country, and assets held there, in making arguments during court proceedings that Dr. Sampson may flee the country or transfer assets there.

Accordingly, the Court shall dismiss both conspiracy claims as to Defendant Cram.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment  is GRANTED to the extent that the Court: 1) DISMISSES Count I of Plaintiffs' Amended Complaint as to Defendant Cram; 2) DISMISSES Count V as to both Defendants Cram and Gettel; and 3) DISMISSES both civil conspiracy claims (Counts III & IV) as to

31

Defendant Cram.

     IT IS SO ORDERED.

                             S/Sean F. Cox
                             Sean F. Cox
                             United States District Judge

Dated:  September 16, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 16, 2014, by electronic and/or ordinary mail.

                             S/Jennifer McCoy
                             Case Manager